UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> — against — <br><br> WILLIAM SAWICZ, <br><br> Defendant. | 08-cr-287 (ARR) <br><br> **Not for print or electronic publication** <br><br> **Opinion & Order** |

ROSS, United States District Judge:

Before me is the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because of the COVID-19 global pandemic and outbreak at the Danbury Federal Correctional Institute ("Def.'s Mot.," ECF No. 62). The defendant asserts that he is especially vulnerable to the threat of contracting a severe case of COVID-19 because he has hypertension, for which he takes prescribed Lisinopril and baby aspirin.[1] Def.'s Mot. 2, 4. Accordingly, the defendant requests that I order his immediate release to home confinement for a period of time to be followed by his already-imposed five-year term of supervised release. Def.'s Mot. 1. The government opposes because the defendant has not exhausted his administrative rights within the Bureau of Prisons. The defendant's

---

[1] Defense counsel has not been able to access the defendant's medical records within the Bureau of Prisons. *See* Def.'s Mot. 4 n.7. Because the government does not contest that the defendant suffers from hypertension and takes these medications, *see* Government Response to Def.'s Mot. 2, ECF No. 64 ("Gov't Resp."), I rely on defense counsel's representations as to the defendant's medical condition.

motion is granted, as set forth below.

On August 23, 2016, I sentenced the defendant to five years' imprisonment, to be followed by five years of supervised release, after the defendant violated the conditions of his term of supervised release by possessing child pornography. *See* Min. Entry, ECF No. 52. The defendant is currently imprisoned at FCI Danbury. The defendant asserts that he has received approval from his unit manager for transfer to a halfway house. Def.'s Mot. 3. The defendant further asserts that Probation has visited and approved his parents' home in Deer Park, New York for his reentry. *Id.*; *see also* Updates to Def.'s Mot. 1, ECF No. 63 ("Updates"). As of March 31, 2020, the Bureau of Prisons ("BOP") Residential Reentry Office was still processing the defendant's application for reentry. *See* Figueroa Email Def.'s Ex. B, ECF No. 62; Def.'s Mot. 3.

Under 18 U.S.C. § 3624(c)(2), a prisoner may be placed "in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Accordingly, under normal circumstances, the defendant would be eligible for release to home confinement on August 26, 2020. *See* Gov't Resp. 1; Def.'s Mot. 3. However, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are

materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement. Mem. for Director of BOP, Def.'s Ex. A at 1 (Apr. 3, 2020). In particular, the Attorney General acknowledged the "significant levels of infection" at FCI Danbury and instructed the Bureau to "move with dispatch . . . to move vulnerable inmates out of [this] institution[]." *Id.* Accordingly, on April 5, 2020, the defendant, through counsel, submitted a letter to the warden of FCI Danbury formally requesting transfer to home confinement. *See* Email Attaching Request for Transfer Def.'s Ex. C, ECF No. 62; Letter to Warden, ECF No. 61. On April 9, 2020, the defendant filed another letter with the warden, this time formally seeking compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). *See* Updates Ex. A, ECF No. 63. To date, the defendant has not received a response from the warden.

Separately from the statutory provisions regarding home confinement, the First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons" warrant such release. 18 U.S.C. § 3582(c)(1)(A)(i). This statutory provision is the one under which the defendant moves before me now. There are four prerequisites to a court's granting compassionate release under the First Step Act. First, the defendant must have exhausted his administrative rights with the BOP. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" release. § 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in § 3553(a). § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. § 3582(c)(1)(A)(i).

A prisoner exhausts his administrative rights when the BOP fails to bring a motion for compassionate release on his behalf and he exercises all administrative rights to appeal, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" § 3582(c)(1)(A). In this case, the defendant has not exhausted his administrative rights with the BOP, as he transmitted his requests for release to the warden of FCI Danbury on April 5, 2020 and April 9, 2020—fewer than thirty days ago. *See* Updates Ex. A, ECF No. 63; Def.'s Ex. C, ECF No. 62; Letter to Warden, ECF No. 61.

However, I waive the exhaustion requirement in this case. "Even where [administrative] exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). A court may waive an administrative exhaustion requirement "where [exhaustion] would be futile, . . . where the administrative process would be incapable of granting adequate relief . . . [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice." *Id.* at 118–19 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–48 (1992), *superseded by statute on other grounds as recognized in Booth v. Churner*, 532 U.S. 731, 740 (2001)). "[U]ndue delay, if it in fact results in catastrophic health consequences," can justify waiving an administrative exhaustion requirement for any of those three reasons. *Id.* at 120–21.

The COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension, justifies waiver here. *See* Order at 7–8, *United States v. Zuckerman*, No. 16

Cr. 194 (AT) (S.D.N.Y. Apr. 3, 2020), ECF No. 116; *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *3, *3 n.3 (S.D.N.Y. Apr. 1, 2020); Def.'s Ex. A at 1 (acknowledging "significant levels of [COVID-19] infection" at FCI Danbury). The delay that the defendant would experience if he had to wait for thirty days to expire before pursuing a motion for compassionate release in this court would put him at significant risk of suffering catastrophic health consequences. *See, e.g.*, *Perez*, 2020 WL 1546422, at *3. In fact, given the COVID-19 outbreak at FCI Danbury, any delay at all puts the defendant at an increased risk.

Next, I find that extraordinary and compelling reasons warrant the defendant's release from prison. 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("USSG"); *see United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399 at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2 (D. Minn. July 25, 2019). While the defendant's hypertension does not place him squarely within any of the Policy Statement's definitions of "extraordinary and compelling reasons," *see* USSG § 1B1.13 cmt. n.1(A)–(D), the defendant asserts that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 because of his hypertension, constitutes an "extraordinary and compelling reason" for his release. Def.'s Mot. 10–11. The government does not dispute this assertion, and I agree with the defendant that the risk of serious illness or death that he faces in prison constitutes an

5

extraordinary and compelling reason militating in favor of his release.[2]

The defendant's motion does not specifically speak to the § 3553(a) factors, which I must consider in deciding whether to grant compassionate release. *See* § 3582(c)(1)(A). Under § 3553(a), I must consider what is "sufficient, but not greater than necessary, to comply with the purposes of [sentencing]." § 3553(a). In particular, I must consider:

>  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>  (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>  (3) the kinds of sentences available;
>  (4) [the kinds of sentence and sentencing range provided for in the USSG]
>  (5) any pertinent [Sentencing Commission policy statement]
>  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>  (7) the need to provide restitution to any victims of the offense.

---

[2] District courts have taken various positions regarding the level of deference that they should afford to the Sentencing Commission's Policy Statement in assessing whether extraordinary and compelling reasons for release are present. *See Ebbers*, 2020 WL 91399, at *4 (deeming the Policy Statement "at least partly anachronistic" because it pre-dates the First Step Act but "nonetheless[] helpful in defining a vague standard"); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (concluding that district court may make "independent assessment" of whether extraordinary and compelling reasons exist); *see also United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release.").

*Id.* In considering these factors, I "should assess whether [they] outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *Ebbers*, 2020 WL 91399, at *7. While I acknowledge that possession of child pornography is a serious offense and that the defendant has already once violated the conditions of a term of supervised release, these considerations do not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is particularly vulnerable. Further militating in favor of the defendant's release is the fact that the defendant is less than five months away from the date on which he would be eligible for release to home confinement under normal circumstances. *See* 18 U.S.C. § 3624(c)(2); Def.'s Mot. 3. In addition, the government has not set forth any argument with respect to the § 3553(a) factors.

Finally, I must consider whether release is consistent with the Sentencing Commission's policy statements. *See* § 3582(c)(1)(A)(i). In particular, I must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a). *See* § 3142(g). Upon his release from prison, the defendant will quarantine himself at home with his parents; assuming that he complies with that directive—and I have no reason to believe that he would not—he would pose little, if any, risk to the public. *See* Def.'s Mot. 12–13. Further, neither the violation on which the defendant is currently serving his prison sentence nor the conduct involved in the underlying crime involved violence or physical contact with minors. Thus, I find that the

defendant does not pose such a danger to the public so as to outweigh the factors militating in favor of his release.

Thus, I grant the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). It is hereby ordered that:

1. The motion by defendant WILLIAM SAWICZ, Reg. No.75670-053, for compassionate release is granted;

2. The defendant's prison sentence be and hereby is reduced to time served;

3. The warden of FCI DANBURY shall forthwith release from custody the person of defendant WILLIAM SAWICZ;

4. Defendant WILLIAM SAWICZ shall not spend 14 days in quarantine at FCI DANBURY prior to his release, but shall be released immediately upon the institution's receipt of this Order, and shall instead spend 14 days in quarantine at the place he shall reside;

5. Defendant WILLIAM SAWICZ shall be on supervised release status, with home confinement for a period of 6 months;

6. For that 6-month period and for 5 years thereafter, defendant WILLIAM SAWICZ shall abide by all the terms and conditions of supervised release that were previously imposed on him and are memorialized in his judgment of conviction. The defendant has consented to the re-imposition of all terms of supervised release that were previously imposed on him. *See* Def.'s Proposed Order 1, ECF No. 62-1. In addition, I find that Additional Supervised Release Term 4, imposed at his initial sentencing proceeding held on April 23, 2009, *see* J. in Criminal Case at 4, May 8,

2009, ECF No. 29, and Additional Supervised Release Term 3, imposed at his August 23, 2016 sentencing on his violation of supervised release, *see* J. in Criminal Case at 4, Aug. 26, 2016, ECF No. 54, are warranted. In addition to the defendant having consented to the re-imposition of the condition, I find that the defendant's interest in child pornography began with and developed from an initial interest in adult pornography. *See* Krueger Evaluation Def.'s Ex. C at 2, May 10, 2016, ECF No. 51; Krueger Evaluation Def.'s Ex. D at 2, Apr. 14, 2008, ECF No. 51. Thus, an adult pornography ban is designed to address a realistic danger of recidivism and is no greater than reasonably necessary to serve the sentencing factors;

7. Upon his release from FCI DANBURY, defendant WILLIAM SAWICZ shall proceed immediately to 29 Somerset Place, Deer Park, NY (the "Residence") where he shall reside during his term of home confinement and supervised release;

8. Defendant WILLIAM SAWICZ must notify the Probation Department for the Eastern District of New York upon his arrival at the Residence, and is directed to follow the instructions of the assigned probation officer, as well as the conditions of supervised release imposed at the time of his sentence;

9. For a period of 6 months from the date of his release from prison, defendant WILLIAM SAWICZ shall be under 24-hour home incarceration to be enforced by location monitoring, using specific technology to be determined by the Probation Department. The defendant may only leave the Residence for necessary medical services with advanced notification, and approval if time permits, from the Probation Department. All other leave from the Residence must be submitted

through defense counsel for the court's approval;

10. In addition, for the first 14 days of his term of home confinement, defendant WILLIAM SAWICZ shall remain in quarantine at the Residence, and shall be allowed no contact with any other person other than his parents, who live in the Residence, except for medical personnel in case of emergency;

11. The 48-month period of deferral of prosecution in case number 15-cr-443 will begin to run on the date of the defendant's release from FCI DANBURY in the instant case. Upon the defendant's release from FCI DANBURY in the instant case, the government will file a letter in case number 15-cr-443 informing me that the deferral period has begun. *See* Pretrial Diversion Agreement 1, No. 15-cr-443 ECF No. 49-1; Order Approving Pretrial Diversion Agreement, No. 15-cr-443 ECF No. 52; Def.'s Mot. 3 n.5;

12. Upon entry of this Order, defense counsel shall immediately contact Probation Officer Joanmarie Langone and coordinate with her to facilitate enforcement of the defendant's electronic monitoring and other release conditions; and

13. Although the court assumes that the Federal Defenders will notify the BOP of the issuance of this order, the court directs that the United States Attorney's Office for the Eastern District of New York formally notify the BOP so that this order can be put into effect as quickly as possible.

Dated:   April 10, 2020                _____/s/_____
         Brooklyn, New York            Honorable Allyne R. Ross
                                       United States District Judge